## ROBERT KING v. SAMUEL CARPENTER.

*Stipulated Facts on Appeal—Enforcement of Title—Lost Deeds Improperly Recorded—Comp. L., § 5072.*

The jurisdiction of the Supreme Court in equity is confined to rehearing the case upon the record below; to pass on new facts would be to exercise original and not appellate jurisdiction, and they cannot be introduced even by stipulation.

Ejectment is the only proper remedy where the holder of a legal title seeks to enforce it against one in possession claiming under an invalid title.

A strictly legal right to property cannot be enforced at law against a party out of possession.

In equity, one can enforce an equitable right to property whether he is in possession or not.

Comp. L., § 5072, was meant to enlarge the powers of equity in regard to quieting title, by allowing a decree in favor of a party in possession without the necessity of repeated trials at law.

Under the recording laws of Michigan any record title is presumptively better than a title defective of record, and clouds it.

If a transfer of title is absolute and unconditional, it is immaterial as against claimants who are not *bona fide* purchasers, whether it is strictly legal or only equitable.

A deed of Michigan land, executed and delivered in another state in 1839 and since the amendment that year of the recording laws of Michigan, was held to have conveyed the grantor's title, though not witnessed nor regularly acknowledged so that its actual record was not valid as a lawful registry.

The loss of a deed was after the lapse of nearly forty years considered sufficiently proved by testimony of a second grantee that he believed it to have been among his papers which had been casually destroyed; this grantee being an expert lawyer who had inquired into the title when he purchased, and had presumably retained his title papers.

Appeal from Genesee. Submitted Oct. 5. Decided Oct. 16.

BILL to compel the release of lands. The facts are in the opinion.

*Harrison Geer* and *Ashley Pond* for complainant cited as to the presumption of the regularity of the deed, *Farrar v. Merrill*, 1 Greenl. (Me.), 17; *Melvin v. Canal Proprietors*, 16 Pick., 137, 140; 17 Pick., 255, 262; *Ryder v. Hathaway*, 21 Pick., 298, 303; *Valentine v. Piper*, 22 Pick., 93; *White v. Loring*, 24 Pick., 319, 322; *Church v. Bullard*, 2 Met., 367; as to the sufficiency of the certificate attached, *Morse v. Hewett*, 28 Mich., 481; *Hunt v. Johnson*, 19 N. Y., 279; *Lynch v. Livingston*, 2 Seld., 423; *Thurman v. Cameron*, 24 Wend, 92; as to the validity of the deed as a common law conveyance as between the parties and against all having notice, *Brown v. McCormick*, 28 Mich., 215. A deed executed according to the laws of the state where it was made, can be proved by its record. *Brown*

*v. Cady,* 11 Mich., 535; *Brooks v. Fairchild,* 36 Mich., 231. The contents of a lost deed may be proved. *Kelsey v. Hanmer,* 18 Conn., 311; *Eslow v. Mitchell,* 26 Mich., 500; *Raynor v. Norton,* 31 Mich., 210. Complainant's possession was sufficient to sustain his bill. *Fitzhugh v. Barnard,* 12 Mich., 104; *Blanchard v. Tyler,* 12 Mich., 339; *Hall v. Kellogg,* 16 Mich., 135. He need not have been in actual possession; defendant fraudulently asserted a pretended title, *Waterman v. Seeley,* 28 Mich., 80, and was no *bona fide* purchaser. *Rodgers v. Burchard,* 34 Tex., 441; 7 Amer. Rep., 283; *Marshall v. Roberts,* 18 Minn., 405; 10 Amer. Rep., 201; *Bragg v. Paulk,* 42 Me., 517; *Oliver v. Piatt,* 3 How., 410; *May v. Le Claire,* 11 Wall., 217; *Battershall v. Stephens,* 34 Mich., 68; *Martin v. Brown,* 4 Minn., 291; *Hope v. Stone,* 10 Minn., 152; *Everest v. Ferris,* 16 Minn., 26.

*J. M. Wattles, A. C. Baldwin* and *William Newton* for defendant. A bill in equity will not be entertained where there is adequate opportunity to litigate the title at law where the parties can have the benefit of a jury. *Tabor v. Cook,* 15 Mich., 324. Complainant should have had actual possession. *Barron v. Robbins,* 22 Mich., 35; *Ormsby v. Barr,* Id., 85; *Stockton v. Williams,* 1 Doug. (Mich.), 566.

CAMPBELL, J. This is a bill filed by complainant as the alleged holder of a title to certain lands in Lapeer county, defective of record because of the failure to record a deed in the chain of title, to compel a release by defendant of a claim set up under a conveyance from the original source of title, but alleged to have been obtained fraudulently, with notice of the true title. The bill also sets up certain tax titles as held by complainant,—and avers possession.

These tax titles were made the subject of a certain stipulation whereby it was provided that they should be withdrawn from consideration on the hearing in the circuit court, but might be used on appeal in this court.

The jurisdiction of this court in equity cases is confined to the rehearing of the case upon the record presented in

the circuit court. We cannot decide a case upon facts which were not submitted for decision there. To pass upon new facts would be to exercise original and not appellate jurisdiction. *Bailey v. De Graff*, 2 Doug. (Mich.), 169; *Adams v. Field*, 25 Mich., 16; *Studwell v. Palmer*, 5 Paige, 166.

Those deeds must be treated for the purposes of this hearing as if they did not exist. The rights of both parties must be determined upon the other titles.

A preliminary question is raised upon the jurisdiction. The defendant claims that this is a bill of peace, filed under the statute to quiet title; and that it can only be filed by a party in actual possession. This it is said the complainant is not shown to have secured. And it is claimed a party out of possession must bring ejectment.

Undoubtedly where a party holding a legal title seeks to enforce it as against a person in possession claiming under an invalid title, or one which the party complaining claims to be such, the only proper remedy is ejectment, and that remedy is perfect. But where a party has an equitable cause of action against another, coming within any recognized rule of equity jurisdiction, such right can be enforced in equity, whether the complainant is in possession or not. The statute (Comp. L., § 5072) was designed to enlarge the powers of equity in regard to quieting title by allowing a decree in favor of a party in possession without the necessity of repeated trials at law. Where complainant's rights are strictly legal he has no means of enforcing them at law against a party out of possession, and cannot compel him to bring an action. If therefore the party not in possession neglects or refuses to bring an action, and prefers to wait for the chances of loss of testimony or other casualty, to gain an advantage over the possessor, the statute enables the latter to bring him in as a defendant and compel him to establish his claims or be barred.

But no statute was needed to enable any one to sue in equity upon an equitable cause of action, and in such case possession is not important and has never been required.

*Salisbury v. Miller*, 14 Mich., 160; *Ormsby v. Barr*, 21 Mich., 474; and 22 Mich., 80; *Jones v. Smith*, 22 Mich., 360.

The bill in the present case—if established—is very clearly within ordinary principles of equity. It avers complainant to have a title which may be treated as a legal title, but which not being recorded as to one of the early muniments of title is in danger of being clouded by the assertion of a recorded title fraudulently obtained from one of complainant's remote grantors. It shows that the defendant has an apparently perfect title of record. Under our recording laws it is beyond question that a record title, whether honest or dishonest, always prevents a title which is imperfect of record from having full marketable value, and is presumptively the better title. It creates a cloud upon the unrecorded title in the strictest as well as plainest sense of that expression, and renders it almost certain that no prudent man will purchase it, at a fair price.

The facts set forth are in substance that one George A. Sornborger received the United States patent for the land in controversy (being the east half of the northeast quarter of section 7, in town 8 north of range 10 east) on or about the 5th day of August, 1837,—the location having been made in his name in June, 1836, by his brother Edwin Sornborger,—and that the patentee on or about October 1, 1837, sold and conveyed the land to one Whitman Corbin, by a deed which was not recorded. October 30, 1839, Corbin sold and conveyed to Henry R. Selden, whose deed was recorded, but is objected to by defendant as irregular. From Selden the chain of title is complete through several *mesne* conveyances to complainant, who purchased in 1871, and on the 19th of April, 1872, received a conveyance from George W. Hanna.

In 1870 complainant was negotiating with Hanna for the lands, and applied to John Abbott who was register of deeds for an abstract of title, informing him of his purpose. Mr. Abbott gave him no intimation of any defect in the title. In April, 1871, Abbott drew up the contract between Hanna and King, and made no such suggestion.

In December, 1870, Abbott, acting on behalf of James
S. Johnson, wrote to George A. Sornborger, asking at what
price he would quit-claim the land.    Edwin replied to this
letter that George had never held the title except for his
benefit, and asked what Abbott would give for a quit-claim.
Abbott replied, offering $100 for a deed from the two broth-
ers to be made to Mary E. Rogers, a sister of Johnson.
Edwin Sornborger procured a deed from George to Edwin's
wife, and came to Lapeer with a deed from Mrs. Sornborger
executed in blank, with no grantee's name inserted.    On
his way to Lapeer he obtained the original patent at the
Detroit Land Office, from which it had never been taken.
He then negotiated with Abbott, demanding $500, while
Abbott offered him $200.    He at last agreed to accept $250,
and Abbott paid him that sum.    Sornborger then inserted
the name of Mrs. Rogers in the deed and it was recorded.
Mrs. Rogers had no personal agency in the matter.    Her
brother, Mr. Johnson, acted throughout in buying and sell-
ing on her behalf, and the money came from him.    She evi-
dently—from the testimony—was not in any way concerned
except for such purpose as suited Mr. Johnson.    Mr. Sorn-
borger says he informed Mr. Abbott that the land had been
already sold many years before, and swears he supposed the
papers were necessary to complete a title in the real owner
of the land.    Abbott denies any such statement, but swears
that he knew all that was on record, and informed Johnson
of it.    He was perfectly aware of Hanna's claim of owner-
ship.    Johnson admits this fully.    The deed was taken Feb-
ruary 3, 1871.    The defendant Carpenter in June, 1871,
obtained a deed from Mrs. Rogers through the agency of
Johnson.    He paid $300 and admits he had knowledge of
King's claim before he paid it.

Upon the undisputed facts of the case the claim that any
of these parties was a *bona fide* purchaser is out of the
question.    It was a clear attempt to get a fraudulent ad-
vantage over an unrecorded title.

But the question is presented whether King has shown
his own title.    Objection is made to the deed from Corbin

to Selden, as not proved. This deed was made in 1839 in New York, and had no witnesses. It was acknowledged before a commissioner of deeds in a way shown by the statutes of that state to have been legal, and it was also executed according to those laws. The commissioner's certificate was verified by the clerk of the court of common pleas of Monroe county, New York, under his seal of office.

The statutes of 1838 required no witnesses to a deed. In 1839 the law was amended so as to declare that no deed should be *recorded* without at least two subscribing witnesses. R. S. 1838, p. 257; L. 1839, p. 219. In 1840 deeds executed out of the State were allowed to be made according to the law of the place of execution. L. 1840, p. 166. The laws of 1838–9 prescribed what officers might take the acknowledgment of deeds abroad and required no other proof than their own certificates. A commissioner of deeds was not one of the officers named. R. S. 1838, p. 258.

Under those laws a deed without witnesses was a legal and not an equitable conveyance, the witnesses being only necessary for record. The deed in question was not recorded so as to make the record effectual as the law then stood.

But in the present case it was proved by Mr. Selden that the deed was executed by Mr. Corbin and delivered to him, and that he caused it to be recorded. Selden gave a warranty deed to his own grantee, and it is fairly presumable from the usual course of business that he retained his own title papers. He testifies that all of his books and papers were destroyed by his partner with whom they had been left by him. After a lapse of forty years we think the deed is proved as satisfactorily as would be possible in most cases, and we have no doubt of its existence.

Mr. Selden also swears that when he purchased the land from Corbin, some question was made about the title, and that Corbin produced a title from Sornborger, which he believes was among the papers before referred to as destroyed. Considering Mr. Selden's eminence as a lawyer and the fact that the question of title was considered and that deed unrecorded, the probabilities are all in favor of his having received a proper chain of muniments into his own posses-

37 MICH.—47.

sion, to enable him to establish his rights. If this is so, the loss is sufficiently proved. Outside of technical rules no one could have any doubt on the subject, and as the testimony was all legally admissible, and convinces us of the facts, we are bound to act on our convictions.

It is not important, if there was a transfer of title, whether it was strictly legal or only equitable, so long as it was absolute and unconditional. There are no *bona fide* purchasers claiming against it, and as to all others the distinction is immaterial.

We are therefore of opinion that complainant, by his deed from Hanna, obtained a complete right to the fee simple of the land, and that the defendant should convey to complainant the title which he wrongfully obtained thereto by his deed from Mrs. Rogers, in fraud of complainant's rights.

The decree dismissing the bill must be reversed with costs of both courts, and a decree entered in accordance with this opinion.

The other Justices concurred.